UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:18-CR-37 |
| | ) |
| CHARLES TAYLOR, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before me on Charles Taylor's pro se motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic [DE 540]. Taylor is the fourth defendant in this multi-defendant case to move for compassionate release – I have not found compassionate release warranted for any of them.

Taylor is a 43 year old male who is currently incarcerated at FCI Ashland in Ashland, Kentucky, with an anticipated release date of July 4, 2022. [DE 546 at 4.] He has served more than half of his 18 month sentence. [DE 507.] In his motion, Taylor claims that he suffers from high blood pressure, asthma, an enlarged heart, a history of bronchitis, Type A border diabetes, obesity, anxiety, severe back pain, and acid reflux. [DE 540 at 1.] He claims he "has been infected with Covid on multiple occasions, but has tested negative the few times that the BOP has tested him." *Id.* Taylor states that he has been working a prison job, is a model inmate with no disciplinary infractions, and has a release plan: his wife and home are waiting for him and he has gainful

employment. [*Id.* at 2.]

Although Taylor complains about the measures the prison has undertaken, according to the Bureau of Prisons website, only 12 inmates (out of a total of 1,258 inmates) and 1 staff member currently have confirmed cases of COVID-19 at FCI Ashland. [www.bop.gov/coronavirus (Last viewed February 18, 2022).] Taylor urges that under-reporting is a big issue. [DE 549 at 2.] No numbers are perfect, and given the enormity of this pandemic, it wouldn't be surprising if some cases go unreported, but I can only work with the data that I am given. Additionally, the government also details the great lengths the Bureau of Prisons has gone through to contain the pandemic, including quarantining, social distancing, mandatory masks, screening of symptoms, and restricting outsiders. [DE 546 at 5.]

The government has provided Taylor's medical records which confirm that Taylor has hypertension, asthma, obesity and opioid use. [DE 548 at 65.] Although Taylor originally refused the vaccine, he later received two doses (the first on January 5, 2022 and the second dose on January 24, 2022). [*Id.* at 69, 115.]

Taylor was involved in a widespread multi-state drug conspiracy. [DE 546 at 2.] He was charged with 12 other defendants in a superseding indictment with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, heroin, and fentanyl analogue in violation of 21 U.S.C. § 846. [DE 127.] I sentenced him pursuant to a plea agreement on April 27, 2021, to 18 months imprisonment to be followed by 4 years of

2

supervised release. [DE 507.] Taylor submitted a request for reduction in sentence to the warden, which was denied. [DE 540 at 1; 540-1 at 2, 4.] Therefore, he has exhausted his administrative remedies.

Section 3582(c)(1) permits a district judge to release a prisoner if the judge finds "extraordinary and compelling reasons" for that step, and the judge has also considered any applicable policy statement of the Sentencing Commission and reviewed the criteria of § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1). The Seventh Circuit held in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), that none of the Sentencing Commission's policy statements apply to compassionate-release requests made by prisoners themselves (as opposed to requests made by the Bureau of Prisons). So I'm left with the question of whether an extraordinary and compelling reason justifies release – and if so, whether release is appropriate given the factors in section 3553(a). As the Seventh Circuit has held, it is best to proceed in that order - only after finding an extraordinary and compelling reason for release need I, as part of "exercising the discretion conferred by the compassionate release statute, . . . consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (quoting *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021)).

I have reviewed the briefs and records in this case and conclude there are no "extraordinary and compelling reasons [that] warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Taylor does face some health issues like hypertension, asthma, and

3

obesity. However, even if Taylor may be at an elevated medical risk were he to contract COVID-19, these medical risk factors are surpassed by the fact that Taylor initially declined the vaccine (which seems to undercut his concern for his physical well-being since this risk was self-inflicted), and then capitulated and received two doses of the vaccine. As the Seventh Circuit has recognized in *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021):

> [F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.

"Impossible" is a pretty high standard. And the Seventh Circuit recently upheld and applied its own standard when it said that when a prisoner "is vaccinated, he is ineligible" for compassionate release. *United States v. Kurzynowski,* 17 F.4th 756, 760-61 (7th Cir. 2021); *see also United States v. Adkins*, 854 F. App'x 758, 759-60 (7th Cir. 2021) (finding a defendant with asthma and other ailments does not present an extraordinary circumstance in light of vaccination). Taylor, who is now fully vaccinated, is therefore unable to obtain compassionate release – at least here, when the request is based solely on concerns over COVID-19.

In his reply memorandum, Taylor brings up the Omicron variant, arguing it was not present when the Seventh Circuit decided *Broadfield*, *Ugbah*, *Kurzynowsk*i, or *Adkins*.

4

[DE 549 at 1.] While it is true these cases pre-date the emergence of the Omicron variant, the Seventh Circuit has continued to apply these principles (foreclosing compassionate release where the prisoner is vaccinated) more recently, even with the presence of the Omicron variant. *See, e.g., United States v. Barbee*, No. 21-1356, 2022 WL 417409, at *2 (7th Cir. Feb. 11, 2022).

In sum, because Taylor cannot establish extraordinary and compelling reasons for release, it is unnecessary for me to consider the section 3553(a) factors. But I will add for the sake of completeness, that those factors do not weigh in Taylor's favor either. The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). As noted at sentencing, Taylor had a large criminal history (including two prior felony convictions for domestic battery and one misdemeanor conviction for domestic battery), with a criminal history score of seven, resulting in a criminal history category of IV. [PSR, DE 475, at 8-11.] Taylor was involved in this serious drug conspiracy from about May 19, 2017, to about March 22, 2018. [*Id.* ¶ 15.] Taylor handled drug transactions for his co-defendant, Adams, when he was in Chicago. [*Id.* ¶ 11.] The two texted and called each other numerous times over the course of the conspiracy, and Adams frequently fronted narcotics to Taylor, who in

5

turn supplied others with narcotics. [*Id.* ¶ 14.] Although he played a smaller role in the conspiracy than some of the other actors, Taylor was still an active participant in a gigantic drug conspiracy, he received a fairly lenient sentence (in my opinion), and I believe he may still pose a danger to the community.

Finally, Taylor's model prison record and work history are also inadequate bases for relief. Even an exemplary prison record does not justify release. *See United States v. Washington*, No. 5:13-020-DCR, 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019) (defendant's claim that he "has an ideal prison record and is the prototype of a successfully rehabilitated individual" does not present an extraordinary circumstance); *United States v. Wieber*, No. 3:14-CR-74-TBR, 2020 WL 1492907, at *2-3 (W.D. Ky. Mar. 27, 2020) (denying relief where defendant took classes in prison and collecting cases stating compassionate release cannot be based on rehabilitation alone); *United States v. Carr*, No. 02-106(JDB), 2020 WL 4192560, at *2 (D. D.C. July 21, 2020) (denying compassionate release notwithstanding defendant's completion of a "wide range of classes" and drug program). While Taylor's good behavior and desire to return to be a productive member of society are certainly commendable, and I encourage Taylor to continue such laudable actions, it is not a basis for release.

## Conclusion

For the aforementioned reasons, Charles Taylor's motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic [DE 540] is DENIED.

ENTERED: February 18, 2022.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT